SLIP OPINION

<div align="center">

Cite as 2017 Ark. 323

# SUPREME COURT OF ARKANSAS

No. CR–16–983

</div>

| | |
|---|---|
| DOUGLAS DAVID TRUE<br><div align="right">APPELLANT</div><br><br>V.<br><br>STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | **Opinion Delivered** November 30, 2017<br><br>PRO SE APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FCR–14–684A]<br><br>HONORABLE STEPHEN TABOR, JUDGE<br><br><u>AFFIRMED</u>. |

<div align="center">

**JOHN DAN KEMP, Chief Justice**

</div>

Appellant Douglas David True appeals from the denial of his pro se petition for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37.1 (2014), which alleged the following grounds for relief: that counsel failed to fully investigate and develop a theory of defense and instead pressured him to plead guilty to capital murder to avoid the imposition of the death penalty; that counsel failed to order a mental evaluation; and that his guilty plea was involuntary in that, at the time the plea was entered, counsel did not inform him that the prosecutor had not yet given notice of intent to seek the death penalty. We will not reverse the trial court's findings granting or denying postconviction relief absent clear error. *State v. Herred*, 332 Ark. 241, 251, 964 S.W.2d 391, 397 (1998). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the totality of the evidence, is left with the definite and firm conviction that a mistake has been committed. *Polivka v. State*, 2010 Ark. 152, at 4, 362

S.W.3d 918, 923. Based on a review of the evidence and the findings of the trial court, there is no showing that the trial court clearly erred when it denied relief. We therefore affirm.

The underlying facts in this case are as follows: On December 17, 2014, True pleaded guilty to two counts of capital murder in the stabbing death of his pregnant girlfriend. True subsequently filed a timely postconviction petition alleging that in July 2014, he woke up on his living-room couch, after consuming an excessive amount of alcohol the night before, and discovered his girlfriend "laying in a bloody mess" on the bathroom floor. True alleged that trial counsel had unreasonably failed to fully investigate his case or to inform him of facts relevant to sentencing before insisting that True plead guilty to two counts of capital murder. True alleged that he would not have pleaded guilty if trial counsel had conducted a thorough investigation and had fully explained the prosecutor's intent.

In response to True's postconviction petition, the trial court appointed counsel,[1] ordered a mental evaluation, and conducted an evidentiary hearing. The report issued on the mental evaluation provided the following conclusions: that True understood the proceedings against him and otherwise had the capacity to assist in his defense; that True did not manifest symptoms of a mental disease or defect; and that True did not lack the

---

[1] True's postconviction counsel did not file an amended Rule 37.1 petition but relied on the allegations set forth in True's pro se petition.

capacity to appreciate the criminality of his conduct or to conform his conduct to the law. Furthermore, True was diagnosed as suffering from antisocial personality disorder and alcohol-abuse disorder, and True's reports of auditory and visual hallucinations were discounted as unreliable. Finally, the mental evaluation included a summary of the State's account of the relevant facts surrounding the crime and disclosed that the victim was five to six months pregnant at the time of her death; that True called 911 and stated that "he had done something bad that he didn't remember"; that True admitted to investigators that he and the victim had an argument on the night of the murder that had escalated into a physical altercation but that he did not recall any other events that occurred; and that True told investigators that he was not aware that anyone else was in the residence on the night of the murder.

At the postconviction hearing, True's trial counsel testified that he had reviewed the evidence against True and spoke to True's family members; that he had begun gathering evidence of True's social history, which included obtaining school and military records for the purpose of developing grounds for mitigation; and that he had hired an investigator to interview and subpoena necessary witnesses for the defense. True's trial counsel confirmed that, at the time he advised True to plead guilty to capital murder, there had been no formal notice of an intent to seek the death penalty.

True testified that due to intoxication, he had "blacked out" and had no memory of murdering his girlfriend. True admitted it was possible that he was the perpetrator, but

insisted that he had never harmed anyone when he had previously "blacked out" due to intoxication. True insisted that he pleaded guilty solely to avoid the death penalty. On cross-examination, True admitted that the evidence showed that his girlfriend had been stabbed eleven times and had been beaten about the face and body.

The trial court entered a written order denying True's claim for relief and found that (1) trial counsel had reasonably investigated the facts and circumstances surrounding True's case; (2) that counsel's failure to make further investigation regarding True's mental-health history was not prejudicial; and (3) that it could not find that trial counsel was ineffective or that the petitioner was unwise for considering the possibility of a death sentence as an incentive for pleading guilty.

When a defendant pleads guilty, the only claims cognizable in Rule 37 proceedings are those that allege that the plea was not made voluntarily and intelligently or was entered without effective assistance of counsel. *Herred*, 332 Ark. at 251, 964 S.W.2d at 397 (citing *Bryant v. State*, 323 Ark. 130, 913 S.W.2d 257 (1996)). The two-part standard adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), is applied to determine the effectiveness of counsel when a defendant has pleaded guilty. *Herred*, 332 Ark. at 251, 964 S.W.2d at 397.

Accordingly, to be entitled to withdraw a guilty plea due to ineffective assistance of counsel, the petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's

4

unprofessional errors, the result of the proceeding would have been different in that the defendant must show that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial. *Id.* (citing *Hill v. Lockhart*, 474 U.S. 52 (1985)). Unless a petitioner makes both showings that counsel was ineffective and that he was prejudiced by trial counsel's errors, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Henington v. State*, 2012 Ark. 181, at 5, 403 S.W.3d 55, 59. Moreover, there is no reason for a court deciding an ineffective-assistance claim to address both components of the inquiry if the defendant makes an insufficient showing on one. *Id.* (citing *Strickland*, 466 U.S. at 697). A defendant who has pleaded guilty necessarily has difficulty in establishing prejudice, given that his or her conviction is premised on an admission of guilt of the crime charged. *Herred*, 332 Ark. at 251, 964 S.W.2d at 397 (citing *Thompson v. State*, 307 Ark. 492, 821 S.W.2d 37 (1991)).

Here, True first alleges that his trial counsel was ineffective for failing to investigate the case and any affirmative defense based on mental disease or defect but instead solely encouraged him to plead guilty. At the hearing, counsel testified as to the substantial steps he took to investigate, and we cannot say the court was clearly erroneous in finding counsel was not ineffective in this regard. In fact, True later testified that he now realized counsel did investigate,

5

Second, True contends that trial counsel was ineffective for failing to request a mental evaluation before advising him to plead guilty. True further argues that trial counsel unreasonably failed to obtain his complete medical records from the military that would have revealed a history of major depression and anxiety.

To establish an affirmative defense based on allegations of mental disease or defect, a defendant has the burden of proving by a preponderance of the evidence that he lacked the capacity to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct. Ark. Code Ann. § 5-2-312(a) (Repl. 2006). The conclusions presented in the mental evaluation ordered by the trial court in the postconviction proceeding established that it was unlikely that a more thorough investigation of True's mental-health history would have produced sufficient evidence supporting an affirmative defense or would have eliminated True's exposure to a possible death sentence. Trial counsel also testified that he did obtain True's military records. Therefore, True does not demonstrate that he was prejudiced by trial counsel's failure to pursue this line of inquiry.

In his third ground for relief, True alleged below and argues on appeal that trial counsel pressured him into pleading guilty to avoid the death penalty, which True alleges had not been formally pursued by the prosecutor. If a defendant is charged with capital murder, death or life without parole are the only sentencing options available upon conviction. *See* Ark. Code Ann. § 5-4-615 (Repl. 2006) and § 5-10-101 (Supp. 2013). A defendant may be charged and convicted of capital murder when the death of a victim was

the result of premeditated and deliberate intent, or when the defendant knowingly causes the death of a victim younger than fourteen years old under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-101(a)(4) & (a)(9)(A). We have held that the choice of which charges to file against an accused and the decision to seek the death penalty are matters that are entirely within the discretion of the prosecutor. *Simpson v. State*, 339 Ark. 467, 471, 6 S.W.3d 104, 107 (1999). As stated above, True confirmed that his girlfriend had been beaten as well as stabbed eleven times, which resulted in her death and the death of her unborn child. Although True asserted that he had blacked out and had no recollection of harming his girlfriend, voluntary intoxication does not negate criminal intent.[2] Ark. Code Ann. § 5-2-207 (Repl. 2006); *see also Spohn v. State*, 310 Ark. 500, 502, 837 S.W.2d 873, 874 (1992) (testimony from expert describing alcoholic blackouts was irrelevant and inadmissible in murder trial as voluntary intoxication is no longer a defense). Although True has no recollection of the events leading to his girlfriend's death, intent can be inferred from the nature and extent of the injuries that caused her death. *Camargo v. State*, 327 Ark. 631, 638, 940 S.W.2d 464, 467–68 (1997). In view of this, sufficient evidence supported the prosecutor's decision to charge True with two counts of capital murder, which carried the possibility of a death sentence.

---

[2] Arkansas Code Annotated section 5-4-605(3) includes intoxication as a mitigating factor to be considered by the jury during sentencing. Nevertheless, it is entirely up to the jury to weigh aggravating or mitigating factors in its decision to sentence a defendant to death. *See Williams v. State*, 369 Ark. 104, 115, 251 S.W.3d 290, 298 (2007).

7

True alleged below and argues on appeal that counsel was ineffective because he did not inform True that the prosecutor had not filed a notice of intent to seek the death penalty. However, True points to no authority that imposes an affirmative duty on a prosecutor to announce an intention to seek the death penalty. Rather, the prosecutor may, with the permission of the court, waive the death penalty. Ark. Code Ann. § 5-4-608. Furthermore, Arkansas Code Annotated section 16-87-205 (Repl. 2005) states in pertinent part that in capital-murder cases, unless the prosecuting attorney informs the circuit court at the arraignment of the defendant that the death penalty will not be sought, it shall be presumed that the death penalty will be sought. Here, no evidence or testimony was introduced to establish that the death penalty had been waived by the prosecutor, and public defenders are required to presume the death penalty will be sought unless the prosecutor indicates otherwise. Ark. Code Ann. § 16-87-205.

In view of the above, trial counsel's advice that True faced a possible death sentence was not erroneous as the death penalty remained a potential outcome of any trial. *See Hill v. Lockhart*, 894 F.2d 1009, 1010 (8th Cir. 1990) (erroneous advice with respect to sentencing that induced a guilty plea may constitute ineffective assistance of counsel); *see also Huff v. State*, 289 Ark. 404, 406, 711 S.W.2d 801, 802–03 (1986) (Ineffective assistance of counsel with regard to a guilty plea can be shown only by pointing to specific errors by counsel.). We have held that fear of the death penalty is a valid basis for a voluntary and intelligent plea of guilty, regardless of whether the plea results from the certainty or the

8

probability of a lesser penalty. *Mitchell v. State*, 271 Ark. 512, 525, 609 S.W.2d 333, 339 (1980). Despite True's assertions that the prosecutor had not declared an intent to seek the death penalty and his additional allegations that he has no recollection of committing the crime, the circumstances surrounding the death of the victim and her unborn child support trial counsel's reasonable belief that True faced a potential death sentence. The trial court did not clearly err when it found that True's guilty plea was voluntarily and intelligently entered upon the advice of competent counsel. *Herred*, 332 Ark. at 251, 964 S.W.2d at 397.

Affirmed.

*Douglas D. True*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Amanda Jegley*, Ass't Att'y Gen., for appellee.