Cite as 2019 Ark. 360

# SUPREME COURT OF ARKANSAS

No. CR–18–206

| | | |
|---|---|---|
| | | **Opinion Delivered:** December 5, 2019 |
| NICHOLAS ROOS | | |
| | APPELLANT | |
| | | APPEAL FROM THE BAXTER |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. 03CR-15-358] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE GORDON WEBB, |
| | | JUDGE |
| | | |
| | | AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Nicholas Roos appeals from the Baxter County Circuit Court's denial of his petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1. For reversal, Roos argues that (1) the circuit court clearly erred by finding that trial counsel's failure to obtain a forensic evaluation prior to his pleading guilty was not ineffective assistance; (2) the circuit court clearly erred in finding that trial counsel was not ineffective by failing to file any pretrial motions to suppress or motions in limine before allowing him to enter his plea; and (3) the circuit court erred by applying the wrong legal standard in ruling on his petition. We affirm.

Roos was charged on December 4, 2015, with two counts of capital murder, two counts of arson, aggravated robbery, Class B theft of property, and Class D theft of property. The criminal information alleged the following facts in support of the charges. On

November 7, 2015, Baxter County law enforcement responded to reports of a residential fire in Midway. Human remains that were later identified as the homeowners, Donald and LaDonna Rice, were found at the residence. One of the Rices' vehicles was also missing from the residence, and it was discovered the next day in a field, abandoned and burned. On November 11, 2015, Mike Pierson, who lived near where the vehicle was found, notified law enforcement that two males had approached his residence on the afternoon of November 7 and asked for a ride. They claimed that a girlfriend had dropped them off nearby to look for a "fishing hole," although Pierson noticed that they were not carrying any fishing equipment. Pierson gave them a ride home. After hearing about the burned residence and vehicle a couple of days later, Pierson became suspicious and decided to notify police. He took officers to the house where he had dropped off the two males, and as they drove by, Pierson saw one of those males getting into a car with a female. When officers turned around to get the license plate number of the car, it drove off at a high rate of speed. The officers eventually caught up to the vehicle and conducted a traffic stop. The driver was identified as Mikayla Mynk, and the passenger was Roos.

A search warrant was obtained for the vehicle and for Mynk's residence. Officers located numerous pieces of jewelry, a large-screen television, a .32-caliber pistol, and multiple items of drug paraphernalia at the home. Additional pieces of jewelry, including two rings with the initials "DRD," a .38-caliber revolver, and power tools, among other items, were found in the vehicle.

On November 13, 2015, Roos agreed to give a statement to police. He admitted that Mynk had dropped him and Zach Grayham off at the victims' house and that Roos had

shot the victims with a Canik 9 mm pistol that a friend had purchased. Roos and Grayham then loaded items from the Rices' home, such as a large-screen television, valuables from the victims' safe, tools, a .38-caliber revolver, and other possessions into the Rices' truck, set the home on fire, and drove the truck to Mynk's house, where they unloaded the stolen items. Roos indicated that they had abandoned the truck and set it on fire, then got a ride from an elderly gentleman back to Mynk's residence. According to Roos, Mynk and Grayham buried the Canik 9 mm pistol near a shed on Roos's father's property. Officers later located this pistol, along with a box of ammunition, near where Roos had described. The criminal information further alleged that Grayham had given a statement to police that was virtually identical to Roos's confession.

Roos entered a negotiated plea of guilty to all charges on May 24, 2016. He was sentenced to concurrent sentences of life without parole for the capital murders, and he received 30 years' imprisonment for each count of arson, 30 years for aggravated robbery, 20 years for Class B theft of property, and 6 years for Class D theft of property, with these sentences to be served concurrently to each other and to his life sentences.[1]

On July 27, 2016, Roos filed a motion for appointment of counsel and a Rule 37.1 petition for postconviction relief. He claimed in his petition that his due process rights were violated because a witness's identification of him was unduly suggestive and that his guilty plea was coerced. Roos further argued that his attorneys were ineffective for not obtaining

[1]As part of his negotiated plea, Roos also pled guilty to burglary charges in a separate case, and his sentences for those charges were ordered to run concurrently to his life sentences in this case. In addition, other criminal charges unrelated to this case were nolle prossed by the prosecution as part of the plea deal.

3

a mental evaluation, not investigating the prosecution's evidence, and not filing motions to suppress.

The circuit court granted Roos's motion for appointment of counsel, and a hearing was held on his Rule 37.1 petition on March 28, 2017. Roos presented three witnesses on his behalf at the hearing, in addition to his own testimony. Levi Clipper and Zach Alexander, two of Roos's longtime friends, testified that Roos had suffered from extreme paranoia in the months preceding the murders and believed that people were following him. Clipper stated that when Roos stayed with him for a few days in September 2015, he noticed Roos's unusual behavior, such as looking out the window every time he heard a noise and believing that there were people on the roof attempting to break into the apartment. Clipper admitted, however, that Roos was "certainly high on something," which he assumed was methamphetamine, and that people who use methamphetamine often behave in a paranoid manner.

Alexander testified that Roos had stayed with him during the nine-month period prior to the murders. Alexander stated that Roos's behavior changed after he returned from the mental-health facility in April 2015 and that Roos suffered from paranoia and hallucinations that people were out to get him. Alexander agreed that Roos was drinking heavily during this time and using methamphetamine on a daily basis. Alexander indicated that he did not see Roos in the two weeks prior to the murders.

Mary Hauf, Roos's grandmother, testified that in April 2015, Roos attempted to commit suicide and was taken to the hospital. She further testified that she had witnessed his paranoia. After he was arrested, Roos tried to harm himself in jail, and Hauf stated that

4

she had asked Roos's trial counsel to have him undergo a mental evaluation, although one was never performed. Hauf testified that Roos had admitted using "all kinds of different drugs."

Roos stated that he was admitted to a psychiatric treatment facility for several days in April 2015 after his suicide attempt and that he had also tried to kill himself in jail and was subsequently held in solitary confinement on suicide watch. He testified that he had never had a mental evaluation subsequent to his arrest despite requesting one from his trial attorneys. Roos stated that he entered his guilty plea despite not having had the evaluation because he was told by his attorneys that his plea bargain would not be accepted if he raised the issue. He further testified that he had asked his counsel to file motions to suppress, claiming that the traffic stop was not based on probable cause and that he had only given a statement to police based on a promise that Mynk would be released from jail.

On cross-examination, Roos admitted that his trial counsel had discussed the plea agreement with him and that he understood that he would receive a life-without-parole sentence instead of facing a possible death sentence. When asked about his mental condition, Roos agreed that his diagnosis in April 2015 was depressive disorder and that his medical records showed no impairment with regard to his comprehension or oral and written expression. He testified that he had started drinking heavily and using drugs after he separated from his children's mother; however, he described himself as "very intelligent" and adequate at problem-solving. Roos further agreed that he was able to effectively assist his attorneys and understand the criminal proceedings, such that his fitness to proceed was not an issue. He instead claimed that his symptoms of "paranoid schizophrenia" resulting

5

from his use of methamphetamine had damaged his brain and had affected his ability to decipher right from wrong.

The State also presented four witnesses at the Rule 37.1 hearing. Special Agent David Smalls with the Arkansas State Police testified to the details of Roos's custodial statement, and Mike Pierson described his encounter with Roos and Grayham on the day of the murders and the circumstances leading up to Roos's arrest. Katherine Streett and Teri Chambers, Roos's trial counsel, also testified. Both Streett and Chambers indicated that they had extensive experience with death-penalty cases. With respect to Roos's claim that he should have received a mental evaluation, trial counsel testified that they would have requested such an evaluation if they had any doubt as to Roos's fitness to proceed. Chambers noted that there was never a question whether Roos understood the charges against him or what she was telling him and that he was able to provide information and make suggestions regarding his defense. Streett and Chambers further indicated that they had not witnessed the paranoid behavior that Roos complained about in his petition.

In addition, counsel testified that they did not believe that Roos had a viable mental-disease-or-defect defense based on his medical records and their conversations with him and with his family members. They indicated that Roos's prior suicide attempts and depression would have been useful only during the penalty phase of the trial and that they did not obtain an independent mental examination for mitigation purposes because Roos chose to plead guilty early in the trial-preparation process. Counsel noted that methamphetamine use was not a defense in Arkansas and that paranoia caused by such drug use would not be a valid basis for a plea of not guilty due to mental disease or defect. Chambers explained that,

after reviewing the evidence provided in discovery, she knew there was no way that an insanity defense would work based on the goal-oriented behavior that Roos demonstrated before and during the commission of the murders and while attempting to cover up the crimes. For example, she indicated that the State would have presented evidence to show that Roos enlisted a friend to buy the gun the day before the murders and that he had planned to rob someone that day in order to obtain money for a lawyer to represent him in his custody dispute.

Regarding Roos's claim that trial counsel should have filed motions to suppress his statement and the evidence before advising him to plead guilty, Streett and Chambers testified that neither motion would likely have been successful. Although Roos alleged that he had only confessed to police in order to obtain his girlfriend's release from jail, Agent Small testified that Roos had voluntarily requested to make a statement and that he had waived his *Miranda* rights before doing so. More importantly, Streett indicated that Roos had made other statements, both before his arrest and during his phone calls from jail, in which he had admitted his involvement in the murders. Similarly, Streett testified that a motion to suppress the evidence found in the vehicle during the traffic stop would also likely not be granted as there would be testimony from a law-enforcement officer that the car had been speeding and that incriminating evidence was found in plain view following the stop. Finally, Street again emphasized that Roos had urged them to pursue plea negotiations well before the deadline to file pretrial motions; she stated that even though it might not have been successful, she probably would have pursued a motion to suppress his statement if he had chosen not to plead guilty and the case had proceeded to trial.

Following the submission of posthearing briefs by both parties, the circuit court entered an order denying Roos's Rule 37.1 petition on November 27, 2017. The court concluded that Roos's trial counsel were not deficient in their representation, and further, that there was no indication that their actions resulted in prejudice to Roos. The circuit court specifically noted that it found Streett and Chambers to be more credible in their testimony than Roos. Roos filed a timely notice of appeal of the circuit court's order on December 11, 2017.[2]

On appeal, Roos first argues that the circuit court erred by finding that his trial counsel's failure to obtain a forensic evaluation prior to permitting him to plead guilty was not ineffective. He contends that the failure to investigate his mental-health issues was objectively deficient based on prevailing standards in a capital case and the "significant neurological red flags" in his background and family history and that he was prejudiced as a result.

A circuit court's denial of a Rule 37.1 petition will not be reversed unless the court's findings are clearly erroneous. *Williams v. State*, 2019 Ark. 129, 571 S.W.3d 921. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been made. *Id.* When a defendant pleads guilty, the only claims cognizable in a Rule 37.1 proceeding are those that allege the plea was not made voluntarily and intelligently or that

---

[2]Roos filed a motion for reconsideration of the circuit court's order on November 29, 2017. However, it was never ruled on by the circuit court, and Roos did not file an amended notice of appeal from the deemed denial of this motion.

8

it was entered without the effective assistance of counsel. *True v. State*, 2017 Ark. 323, 532 S.W.3d 70.

The benchmark for judging a claim of ineffective assistance of counsel, as derived from *Strickland v. Washington*, 466 U.S. 668 (1984), is whether counsel's conduct so undermined the proper functioning of the adversarial process that the proceeding cannot be relied on as having produced a just result. *Williams*, *supra*. We assess the effectiveness of counsel under the two-prong standard adopted in *Strickland*. *Id*. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Woods v. State*, 2019 Ark. 62, 567 S.W.3d 494. In other words, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Mancia v. State*, 2015 Ark. 115, 459 S.W.3d 259. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Woods*, *supra*. The burden is on the petitioner to overcome this presumption and to identify specific acts and omissions by counsel that could not have been the result of reasoned professional judgment. *Sims v. State*, 2015 Ark. 363, 472 S.W.3d 107. Conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. *Id*.

Second, the petitioner must show that counsel's deficient performance prejudiced his or her defense. *Rasul v. State*, 2015 Ark. 118, 458 S.W.3d 722. In the context of a guilty plea, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Mancia*,

9

*supra*. We have held that an appellant who has pleaded guilty necessarily has difficulty in establishing prejudice given that the plea is premised on an admission of guilt of the crime charged. *True, supra*. Unless a petitioner can satisfy both prongs of the *Strickland* standard, it cannot be said that the conviction resulted from a breakdown in the adversarial process that rendered the result unreliable. *Id.*

Roos contends that counsel's failure to obtain a forensic evaluation prior to permitting him to plead guilty was objectively deficient based on prevailing standards in capital cases and on what he refers to as "neurological red flags" in his background and family history. He cites the American Bar Association's *Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases* and argues that these guidelines emphasize the importance of investigating possible affirmative defenses and consulting with mental–health experts.

As Roos indicates, however, these guidelines are merely "guides to determining what is reasonable." *Wiggins v. Smith*, 539 U.S. 510, 524 (2003). Roos's trial counsel testified that they obtained his medical records from April 2015 and spoke with his family and friends, in addition to meeting with Roos on multiple occasions and reviewing the evidence in the case. Both Streett and Chambers stated that after performing this investigation, they had no doubt as to Roos's mental competency. They testified that they noticed no signs of paranoia or hallucinations during their representation of Roos and that he fully understood the charges against him, the legal process, and the potential sentence that he faced. Furthermore, counsel stated that while they were aware of Roos's depression, prior suicide attempts, and claims of paranoia symptoms, there was no indication that he was suffering from a mental

10

disease or defect at the time of the murders. They noted that Roos's actions leading up to, during, and after the crimes revealed a high level of planning and goal-oriented behavior. Streett and Chambers testified that Roos's paranoid behavior was instead a result of his drug and alcohol use, which is not a valid defense to the crimes. *See* Ark. Code Ann. § 5-2-207(a) (Repl. 2013) (stating that self-induced intoxication is not an affirmative defense to a prosecution). While counsel agreed that a mental evaluation from their own mental–health expert would have been necessary for mitigation purposes if the case had proceeded to trial, they stated that Roos was "adamant" that he wanted to pursue a guilty plea as soon as they discussed with him the evidence that was provided in discovery, which was within six months of the charges being filed.

Having taken into account the evidence in the record, as well as the testimony and its own observation of Roos at the hearing, the circuit court concluded that there was no reasonable basis to request a mental examination of Roos to establish either his unfitness to proceed or to assert a plea of not guilty by reason of mental disease or defect. The circuit court further found that trial counsel were not deficient for not requesting a mental evaluation when they were following Roos's direction to seek a guilty plea in order to avoid the death penalty. We have held that an attorney's performance is not deficient for following his or her client's wishes. *Sykes v. State*, 2011 Ark. 412 (per curiam). In addition, as the State asserts, the commentary to Guideline 10.9.1 of the 2003 ABA Guidelines states that a plea is the optimal outcome in many death cases and that it is an obligation of counsel to seek such an agreed–upon disposition throughout all phases of the case. *See ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases* 10.9.1 cmt. (2003).

Given the evidence discussed above, we cannot say that the circuit court's conclusion that trial counsel were not ineffective for failing to obtain a mental evaluation was clearly erroneous. Accordingly, there is no need to discuss the second prong of the *Strickland* analysis, which is whether Roos was prejudiced by this failure. *True*, *supra*. We affirm the circuit court's denial of relief on this claim.

Roos next argues that the circuit court erred by finding that trial counsel was not ineffective for failing to file any pretrial motions to suppress or motions in limine before permitting him to plead guilty. In his petition, Roos alleged only that counsel were deficient for not filing a motion to suppress his confession and a motion to suppress evidence seized as a result of the traffic stop. An appellant is limited to the scope and nature of the claims raised below in a Rule 37.1 proceeding and cannot raise new arguments on appeal. *Reams v. State*, 2018 Ark. 324, 560 S.W.3d 441. Thus, we address counsel's alleged deficient performance only with respect to the motions to suppress that were raised in Roos's petition.

With regard to Roos's claim that a motion to suppress his confession should have been filed, Streett testified that she did not believe such a motion would have been successful in light of Agent Small's testimony that Roos had requested to speak with Small and that Roos had indicated that he was voluntarily waiving his right to remain silent. Furthermore, Streett noted that Roos had made other statements in which he admitted his participation in the crimes and that these statements would have been admitted at trial even in the absence of his confession.

In addition, Streett testified that she had discussed with Roos his concern that there was no probable cause for the traffic stop. However, the discovery provided by the State

12

indicated that the police stopped the vehicle because it was speeding and then found incriminating items in plain view. As a result, Streett did not believe that a motion to suppress the evidence would be successful either.

It is not ineffective assistance if counsel fails to file a motion that would not be meritorious. *Rea v. State*, 2016 Ark. 368, 501 S.W.3d 357. As with the request for a mental evaluation, the circuit court also found that Roos had instructed his counsel that he wished to plead guilty months before the pretrial deadline to file motions had expired and that it was not objectively deficient for counsel to have failed to file such motions by the time of the plea hearing. Roos argues that regardless of the plea negotiations, counsel should have investigated potential claims that could be raised in pretrial motions. However, testimony by Streett and Chambers indicated that counsel did, in fact, investigate potential claims, including the motions to suppress discussed above. It was not until discovery had been received and reviewed that counsel discussed a possible plea deal with Roos, and he chose at that time to pursue a guilty plea in order to avoid the death penalty. As noted above, it is not deficient performance for an attorney to follow the wishes of a client. *Sykes*, *supra*. Thus, the circuit court was not clearly erroneous in finding that trial counsel were not ineffective by failing to file pretrial motions to suppress, and a discussion of potential prejudice is unnecessary. *True*, *supra*. We affirm the denial of this Rule 37.1 claim as well.

Finally, Roos argues that if this court does not reverse the circuit court's rulings with respect to the claims discussed above, we should reverse and remand for the circuit court to apply the correct legal standard to his Rule 37.1 petition. Specifically, he contends that the circuit court "misconstrued *Strickland*," "placed far too much weight on Roos's plea

13

colloquy," "misapplied the standard for prejudice," misunderstood "the effects long-term drug use and repeated suicide attempts can have on an individual's competency and mental health," and erred by relying "on two lay witnesses for the finding that Roos's paranoid behavior . . . was due to methamphetamine abuse."

Essentially, Roos challenges the weight and credibility of the evidence, which is the circuit court's province to determine, not this court's. *See Williams v. State*, 2017 Ark. 123, 517 S.W.3d 397. Furthermore, the circuit court's detailed order correctly discussed and analyzed the evidence under the *Strickland* two-prong analysis, and Roos's argument that the court applied the wrong standard is without merit. To the extent that Roos is challenging whether his plea was entered intelligently and voluntarily, the circuit court rejected this argument as well after reviewing the transcript of the plea hearing and observing Roos testify at the Rule 37.1 hearing. In fact, Roos admitted at the postconviction hearing that he was competent, able to assist counsel, and understood the charges he was facing. We have held that a plea of guilty that is induced by the possibility of a more severe sentence does not amount to coercion. *Wood v. State*, 2015 Ark. 477, 478 S.W.3d 194. In sum, the circuit court did not clearly err by finding that Roos did not meet his burden to demonstrate that he received ineffective assistance of counsel pursuant to *Strickland*, and we affirm the denial of Roos's Rule 37.1 petition.

Affirmed.

Special Justice JOSHUA M. OSBORNE joins in this opinion.

HART, J., dissents.

WOMACK, J., not participating.

**JOSEPHINE LINKER HART, Justice, dissenting.** I recognize that this is a capital-murder case involving a particularly egregious crime that could support a sentence of death. Even so, a recommendation by court-appointed counsel that Roos plead guilty in exchange for a recommendation by the prosecutor for life without parole can only be made after counsel has made a full and complete investigation of the facts. In this case, there was a wealth of information indicating that Roos had long-term mental health problems requiring expert evaluation of Roos's mental health for competency at the time of pleading and at the time of the crime. Neither Roos's trial counsel nor this court is trained to evaluate Roos's mental health status at the time of pleading nor, *a fortiori*, at the time the crime occurred.

Trial counsel's subjective opinion of Roos's mental health status is not evidence of his competence or mental state at the time the crime occurred, but the failure to obtain proper evaluations when presented with facts supporting mental health problems does bear on the failure of trial counsel to pursue an adequate defense. Her recommendations that a client waive the constitutional and procedural safeguards afforded every defendant, without obtaining competent expert examination, cannot be considered adequate even if the death penalty was removed from consideration.

In sum, trial counsel's decision to advise a demonstrably suicidal client (as shown by Roos's attempts to take his own life both shortly before and shortly after the crime) to plead guilty to capital murder (less than six months after he was charged) without having sought or obtained a forensic mental-health examination (or filing any other motions) was not

reasonably adequate representation.[12] This satisfies the first prong of *Strickland v. Washington* for ineffective assistance of counsel. *See* 466 U.S. 668, 688 (1984) ("[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.") (citing *Strickland*, 466 U.S. at 689).

To assess the second prong of *Strickland*, which asks whether Roos was prejudiced by the deficient representation, we should remand to the circuit court with instructions to order the forensic examination that Roos should have received before trial. The results of that examination would illuminate whether Roos could have had a viable defense for mental disease or defect.

I dissent.

*James Law Firm*, by: *Michael K. Kaiser* and *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.

---

[1]As to the guilt phase, capital-defense counsel must investigate possible affirmative defenses such as insanity. *ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases* (rev. ed. 2003), Guideline 1.1, commentary. "The mitigation investigation should begin as quickly as possible, because it may affect the investigation of first phase defenses [and] decisions about the need for expert evaluations." *Id.* at Guideline 10.7, commentary. "Counsel must compile extensive historical data, as well as obtain a thorough physical and neurological examination. Diagnostic studies, neuropsychological testing, appropriate brain scans, blood tests or genetic studies, and consultation with additional mental health specialists may also be necessary." *Id.* at Guideline 4.1, commentary (internal citations omitted).

[2]The majority's disregard for the ABA Guidelines is a bad recipe. Looking beyond the circumstances of this particular case (as set forth herein, I offer no opinion as to whether Roos was actually prejudiced here), I implore our defense bar to hold itself to higher standards than what this court's Rule 37 jurisprudence has come to allow.