

# SUPREME COURT OF ARKANSAS

**No.** CR-15-819

| | |
|---|---|
| EDWARD JOSEPH REYNOLDS | **Opinion Delivered** May 19, 2016 |
| APPELLANT | APPEAL FROM THE GRANT COUNTY CIRCUIT COURT [NO. 27CR-2014-106-1] |
| V. | |
| STATE OF ARKANSAS | HONORABLE CHRIS E WILLIAMS, JUDGE |
| APPELLEE | AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

Edward Joseph Reynolds appeals a jury's verdict finding him guilty of kidnapping and aggravated assault. He was sentenced as a habitual offender to consecutive sentences of life imprisonment and fifteen years' imprisonment, respectively. On appeal, Reynolds contends that the circuit court erred by (1) denying his directed-verdict motions on both charges; (2) allowing the victim to testify about her injuries despite the prosecutor's failure to provide her medical records in discovery; and (3) overruling his objection to remarks made by the prosecutor during closing argument. We find no error and affirm.

I.    *Relevant Facts*

In October 2014, Rachel Wake, the victim, Reynolds, her boyfriend, and Michael Watters, Reynolds's friend, resided together. One evening in late October, Wake accompanied Reynolds to his workplace. While there, the couple got into an argument and Reynolds choked her. She screamed, and unbeknownst to either of them, two of Reynolds's coworkers witnessed the incident.

Reynolds lost his job as a result of the incident. He became irate and told Wake that since he lost his job, she was going to lose her life. He tied her up at the foot of their bed with cables from an exercise machine. He bound her arms and feet together behind her back and secured them with padlocks. He then wrapped a cable around her neck and attached it to the cables restraining her arms and legs so that she had to hold her head up to keep from choking. He also placed a gag around her mouth. He beat her until her eyes were swollen shut. Reynolds told Wake he was going to kill her, and he and Watters discussed where they would drop her body. Reynolds also threatened to behead Wake's son and leave his head in the room with her for three days.

Eventually, Reynolds released Wake. He helped her bathe to wash off the blood. She then got in bed with Reynolds and slept. Wake testified that Reynolds had been doing drugs throughout the ordeal and that she knew that if she outlasted his drugs, she would live. Two days later, Reynolds and Wake went to get more drugs at Clarence Stillman's home. While at his house, Wake asked Stillman to call her mother. Wake's mother arrived and took Wake to her house. She later called the police, and an ambulance took Wake to the hospital. At the hospital, Wake was treated for a concussion, two minor fractures to her wrist and pinky finger, and contusions to her neck, throat, and chest.

The police obtained a search warrant for Reynolds's home a few days later. They retrieved several cables, which were detached from the exercise machine, and locks. Blood samples taken from the carpet near the foot of the bed in Reynolds's bedroom matched Wake's DNA. The State filed kidnapping and aggravated-assault charges against Reynolds and Watters. Watters later pleaded guilty in exchange for a suspended sentence and his

testimony against Reynolds. The jury found Reynolds guilty of both charges. During the penalty phase of the trial, the State introduced evidence of Reynolds's eleven prior convictions. Reynolds was sentenced to life imprisonment for kidnapping and fifteen years for aggravated assault, with the sentences to run consecutively. Thus, this court's jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(2) (2015).

## II. *Sufficiency of the Evidence*

Reynolds argues that the circuit court erred by not granting his motion for directed verdict because the State failed to introduce substantial evidence that he restrained Wake for the purpose of terrorizing her or that he engaged in life-threatening activity against her. A directed verdict is a challenge to the sufficiency of the evidence. *Williamson v. State*, 2009 Ark. 568, 350 S.W.3d 787. In reviewing a sufficiency challenge, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* This court does not weigh the evidence presented at trial or assess the credibility of the witnesses, as those are matters for the fact-finder. *Riding v. State*, 360 Ark. 424, 203 S.W.3d 63 (2005). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* On appeal from a denial of a directed verdict, this court views the evidence in the light most favorable to the appellee and affirms if there is substantial evidence to support the verdict. *Id.*

SLIP OPINION

A person commits the offense of kidnapping when he restrains another person, without consent, so as to interfere substantially with the other person's liberty with the purpose of terrorizing the person. Ark. Code Ann. § 5-11-102(a)(6) (Repl. 2013). "Restraint without consent" includes restraint by physical force, threat, or deception. Ark. Code Ann. § 5-11-101(3)(A). A person acts purposely with respect to his conduct or a result of his conduct when it is his conscious object to engage in conduct of that nature or to cause that result. Ark. Code Ann. § 5-2-202(1).

A person commits aggravated assault when, under circumstances manifesting extreme indifference to the value of human life, he purposely engages in conduct that creates a substantial danger of death or serious physical injury to another person. Ark. Code Ann. § 5-13-204(a)(1). "Serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ." Ark. Code Ann. § 5-1-102(21).

Reynolds claims there was insufficient evidence that he restrained Wake for the purpose of terrorizing her because he eventually untied her hands, allowed her to untie the remaining restraints, and helped her take a bath. He also points out that Wake did not attempt to escape from their home.

Reynolds's argument is without merit. There was overwhelming evidence introduced at trial that Reynolds restrained Wake and threatened to kill her and her son. Wake testified in detail how Reynolds restrained her with cables and locks for hours while he severely beat her. Her eyes were swollen to the point she was unable to see. Because

of the restraints, she was forced to keep her head up to keep from choking. Reynolds repeatedly told her that he was going to kill her and that he would behead her son.

Watters's testimony confirmed Wake's account. He testified that he saw Wake's hands and feet bound with cables and locks and a belt wrapped around her neck. He heard Reynolds beating Wake and later saw that she was bruised and that her eyes were severely swollen. Watters verified that he and Reynolds had discussed disposing of Wake's body. He also recalled Reynolds's threats to behead Wake's son. Photographs of Wake, which were admitted at trial, evidenced the severe bruising to her face and body, as well as ligature marks to her neck, wrists, and ankles. Police officers also described how they found the cables and locks in Reynolds's home and that Wake's blood was located near the foot of Reynolds's bed.

We find that these facts are sufficient to support Reynolds's kidnapping conviction. His argument that Wake did not attempt to escape immediately after the restraints had been removed does not negate his criminal conduct nor does the fact that he later helped her bathe. Thus, we hold that the circuit court did not err in denying his motion for directed verdict.

Reynolds also asserts that there was insufficient evidence to support his aggravated-assault conviction. He first claims that the State failed to prove that he acted purposely because he had been using drugs during the incident. We agree with the State that this argument is not preserved for appeal because Reynolds failed to raise it in his directed-verdict motion to the circuit court. Ark. R. Crim. P. 33.1(c) (2015); *Rounsaville v. State*, 372 Ark. 252, 256, 278 S.W.3d 486, 490 (2008) ("Arguments not raised at trial will not be

addressed for the first time on appeal, and parties cannot change the grounds for an objection on appeal, but are bound by the scope and nature of the objections and arguments presented at trial.").

Additionally, Reynolds argues that there was insufficient evidence that he acted under circumstances manifesting extreme indifference to the value of human life because he did not engage in life-threatening activity against Wake. This argument also is unsuccessful. The State presented evidence that Reynolds had beaten Wake repeatedly while she was bound in such a position that she had to hold her head up in order not to choke. The photographs introduced at trial depicted serious injuries to her face, head, and neck. He threatened to kill her and talked about disposing of her body. We find that this evidence was sufficient to support the jury's verdict, and the circuit court did not err in denying Reynolds's motion for directed verdict.

### III.  *Victim's Testimony of Her Injuries*

Reynolds argues that he was exposed to "extreme prejudice" because the circuit court allowed Wake to testify about her injuries even though "the State failed to provide the alleged victim's medical records prior to trial." This argument also is not preserved for appellate review. A defendant must object at the first opportunity and then renew his objection each time the issue is raised. *Conte v. State*, 2015 Ark. 220, 463 S.W.3d 686; *Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003). Otherwise, he has waived his argument regarding that issue on appeal. *Conte*, 2015 Ark. 220, at 29, 463 S.W.3d at 704.

Reynolds's counsel failed to make a contemporaneous objection when Wake was first asked about her injuries and testified that she suffered from a "concussion, two minor

fractures, [and] a bunch of contusions to [her] neck and throat, back and chest." It was not until later, when the prosecutor returned to the subject of her injuries, that an objection was made. However, at that point, the jury had already heard this evidence, and Wake's statement was merely cumulative of her prior testimony regarding the injuries she suffered. "Evidence that is merely cumulative or repetitious of other evidence admitted without objection cannot be claimed to be prejudicial." *Conte*, 2015 Ark. 220, at 30, 463 S.W.3d at 704.

### III.    *Prosecutor's Remarks*

Finally, Reynolds argues that the circuit court erred by overruling his objection to the prosecutor's comments in closing argument, which he calls an "improper vouching on behalf of Ms. Wake." A circuit court is given broad discretion to control counsel in closing argument, and we do not interfere with that discretion absent a manifest abuse of discretion. *Jefferson v. State*, 372 Ark. 307, 321–22, 276 S.W.3d 214, 225–26 (2008). "Although it is not good practice for counsel to inject their personal beliefs into the closing arguments, mere expressions of opinion by counsel in closing argument are not reversible error so long as they do not purposely arouse passion and prejudice." *Id.* (citing *Neff v. State*, 287 Ark. 88, 94, 969 S.W.2d 736, 740 (1985)). In *Parker v. State*, 265 Ark. 315, 332–33, 578 S.W.2d 206, 216 (1979), we stated,

> The trial judge has a very broad latitude of discretion in supervising and controlling the arguments of counsel and his action is not subject to reversal unless there is manifest gross abuse of that discretion or the matter complained of is a statement of the attorney's opinion made only to arouse passion and prejudice of the jury, and which necessarily has that effect. . . . It is also significant that the trial judge had instructed the jury that closing arguments of attorneys are not evidence and that arguments having no basis in the evidence should be disregarded.

(Citations omitted.)

Here, the prosecutor stated the following during closing argument: "But I also believe that what happened to her happened to her. I don't believe, even though I don't

agree with, bless her heart, the way she lives and the fact that she loves this man still, I believe that what she has told us today." The prosecutor's comments here did not seem to be calculated or made with the purpose of arousing any passion or prejudice of the jury. Even though the circuit court overruled Reynolds's objection, it promptly gave a curative instruction, informing the jury that the prosecutor's statements were only argument and were not evidence. For these reasons, we find that the circuit court did not abuse its discretion in denying Reynolds's objection. *See Harrison v. State*, 276 Ark. 469, 475–76, 637 S.W.2d 549, 553 (1982) (finding no error in denying motion for mistrial because the attorney's comments during closing argument did not appear calculated and the court immediately admonished the jury).

Pursuant to Arkansas Supreme Court Rule 4-3(i), the record has been reviewed for all errors prejudicial to Reynolds. No reversible error has been found.

Affirmed.

BAKER and HART, JJ., concur.

**KAREN R. BAKER, Justice, concurring.** Although I concur in the result reached by the majority, I write separately because the circuit court committed error with regard to the prosecutor's remarks in his closing argument. However, because the error was harmless, I would affirm the circuit court.

In *United States v. Young*, 470 U.S. 1, 6, (1985) the United States Supreme Court addressed prosecutors' conduct and stated:

> Nearly a half century ago this Court counselled prosecutors "to refrain from improper methods calculated to produce a wrongful conviction. . . ." *Berger v. United States*, 295 U.S. 78, 88(1935). The Court made clear, however, that the adversary system permits the prosecutor to "prosecute with earnestness and vigor." *Ibid*. In

other words, "while he may strike hard blows, he is not at liberty to strike foul ones." *Ibid*.

The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone. Prosecutors sometimes breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence. Accordingly, the legal profession, through its Codes of Professional Responsibility, and the federal courts, have tried to police prosecutorial misconduct. In complementing these efforts, the American Bar Association's Standing Committee on Standards for Criminal Justice has promulgated useful guidelines, one of which states that "[i]t is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." ABA Standards for Criminal Justice 3-5.8(b) (2d ed. 1980).

(Parallel citations omitted).

Further, as noted by the majority, in *Jefferson v. State*, 372 Ark. 307, 321–22, 276 S.W.3d 214, 225 (2008), in addressing a motion for mistrial and affirming the circuit court's denial of the motion, we explained "Although it is not good practice for counsel to inject their personal beliefs into the closing arguments, mere expressions of opinion by counsel in closing argument are not reversible error so long as they do not purposely arouse passion and prejudice. *Neff v. State*, 287 Ark. 88, 94, 696 S.W.2d 736, 740 (1985)."

Here, in his closing remarks, the prosecutor stated,

I believe that what happened to her happened to her. . . . I believe that what she has told us today.

Reynolds objected to the prosecutor's remarks asserting that the prosecutor had made "improper argument, improper vouching on behalf of the witness." The circuit court overruled the objection and stated,

Ladies and gentlemen, I instructed you that argument of counsel is not evidence in the case. It is only to guide you and direct you to where certain things are. Whether or not these facts are specifically in the case or not, they are in the general area of the case. But that is not evidence.

Despite this instruction, the prosecutor's remarks directly prejudiced Reynolds. The prosecutor improperly placed credibility and support from the prosecutor and the State in the victim's testimony. In other words, the prosecutor improperly vouched for the victim. Further, the curative instruction did not address the improper vouching and did not cure the prejudice. However, despite this statement being inappropriate and prejudicial to Reynolds, the evidence presented of Reynolds's guilt at trial was overwhelming, and the fundamental fairness of the trial was not compromised. When the evidence of guilt is overwhelming and the error is slight, we can declare that the error was harmless and affirm. *Barr v. State*, 336 Ark. 220, 234–35, 984 S.W.2d 792, 799 (1999); *Johnston v. State*, 2014 Ark. 110, at 7, 431 S.W.3d 895, 899. Here, in addition to Wake's testimony, Watters's testimony confirmed Wake's account. Watters testified that he saw Wake's hands and feet bound with cables and locks and a belt wrapped around her neck. He further testified that he heard Reynolds beating Wake and that he later saw Wake's severely bruised and swollen eyes. At trial, photographs were introduced into evidence showing severe bruising to Wake's face and body, and ligature marks to her neck, wrists, and ankles. Watters further testified that he and Reynolds had discussed disposing of Wake's body and that Reynolds' had threatened to behead Wake's son. Additionally, law enforcement testified that they located cables and locks in Reynolds's home and that Wake's blood was located near Reynolds's bed.

Accordingly, based on my discussion above, the record demonstrates that there is overwhelming evidence of Reynolds's guilt, and the error was harmless. Therefore, I would affirm the circuit court.

Hart, J., joins.

*Philip C Wilson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.