Cite as 2020 Ark. 174

# SUPREME COURT OF ARKANSAS

**No.** CR–18–555

| | |
|---|---|
| EDWARD JOSEPH REYNOLDS<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** April 30, 2020<br><br>PRO SE APPEAL FROM THE GRANT COUNTY CIRCUIT COURT<br>[NO. 27CR–14–106]<br><br>HONORABLE CHRIS E WILLIAMS, JUDGE<br><br><u>AFFIRMED</u>. |

**JOSEPHINE LINKER HART, Associate Justice**

Appellant Edward Joseph Reynolds brings this pro se appeal from the trial court's denial of his claims for postconviction relief that were raised pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure (2019). The trial court held a hearing on the petition and denied relief on the bases that Reynolds (1) failed to demonstrate that trial counsel was ineffective and (2) failed to provide sufficient supporting evidence to establish that the alleged deficiencies of counsel had prejudiced him under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The trial court concluded that the alleged deficient actions of trial counsel were based on reasonable legal and strategic grounds and that counsel's alleged errors would not have changed the outcome of the trial. We affirm.

## I. *Standard of Review*

A trial court's denial of a Rule 37.1 petition will not be reversed unless the court's findings are clearly erroneous. *Williams v. State*, 2019 Ark. 129, 571 S.W.3d 921. A finding

is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been made. *Id.*

## II. *Background*

A jury found Reynolds guilty of kidnapping and aggravated assault, and he was sentenced as a habitual offender to consecutive sentences of life imprisonment and 180 months' imprisonment. We affirmed. *Reynolds v. State*, 2016 Ark. 214, 492 S.W.3d 491.

A review of the trial record reveals[1] that the evidence and testimony adduced at trial demonstrated that the victim, Rachel Wake, was Reynolds's girlfriend and lived with him along with Mike Watters, who was a friend of Reynolds's. An altercation between Wake and Reynolds occurred at Reynolds's workplace, causing Reynolds to lose his job. Reynolds blamed Wake for the loss of his job and told her she was going to lose her life. To that end, Reynolds bound Wake's arms and feet together behind her back and secured the restraints with padlocks. In addition, Reynolds wrapped a cable around Wake's neck and attached it to the cables that secured her arms and legs so that Wake was forced to hold her head up to keep from choking. Reynolds then placed a gag in Wake's mouth and beat her until her eyes were swollen shut. During the course of the assault, Reynolds discussed with Watters how he would dispose of Wake's body and threatened to kill and behead Wake's son.

---

[1]This court may take judicial notice in postconviction proceedings of the record on direct appeal without the need to supplement the record. *Williams v. State*, 2019 Ark. 289, 586 S.W.3d 148.

Eventually, Reynolds released Wake and helped her bathe and wash off the blood. Two days after the assault, Reynolds brought Wake with him to the home of a third party to purchase drugs. While she was at this house, she surreptitiously asked the third party to contact her mother. Shortly thereafter, Wake's mother arrived and picked up Wake. While at her mother's house, Wake called the police and was taken to the hospital where she was treated for a concussion, fractures to her fingers, and contusions to her neck, throat, and chest. A search warrant was obtained for Reynolds's home where police retrieved several cables and locks that resembled the restraints described by Wake. Blood samples from the carpet near the foot of the bed matched Wake's DNA. Wake testified that for the two days she remained with Reynolds, her eyes were swollen shut, and she was unable to see. She further testified on cross-examination that Reynolds had threatened to kill her if she left him.

Watters was charged as an accomplice in the kidnapping and assault and entered into a plea agreement. As part of the agreement, Watters testified against Reynolds and corroborated Wake's testimony that Reynolds had beaten, gagged, and bound her with cables. The torture continued for hours, and during this period, Reynolds discussed with Watters how and where to dispose of Wake's body.

## III. Strickland *Standard*

Our standard for ineffective-assistance-of-counsel claims is the two-prong analysis set forth in *Strickland*. *Williams*, 2019 Ark. 289, 586 S.W.3d 148. Under the *Strickland* standard, to prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced his

3

defense. *Id*. Unless a petitioner makes both showings, the allegations do not meet the benchmark on review for granting relief on a claim of ineffective assistance. *Id*.

Counsel is presumed effective, and allegations without factual substantiation are insufficient to overcome that presumption. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55. Petitioner has the burden of overcoming the presumption by identifying specific acts and omissions that, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id*.

A court need not address both components of the inquiry if the petitioner makes an insufficient showing on one. *Williams*, 2019 Ark. 289, 586 S.W.3d 148. To demonstrate prejudice, the petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*. Conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. *Id*.

## IV. *Reynolds's Claims for Relief*

Reynolds raised eight ineffective-assistance-of-counsel claims in his Rule 37.1 petition and reasserts those claims at various points in his brief on appeal, contending that his trial counsel's decisions were unreasonable and prejudicial. Reynolds challenged counsel's failure to object to the introduction of testimony and other evidence, failure to preserve challenges to the sufficiency of the evidence on appeal, and failure to call a witness who would have provided beneficial testimony.

It is not ineffective assistance if counsel fails to file a motion that would not be meritorious. *Rea v. State*, 2016 Ark. 368, 501 S.W.3d 357 (per curiam). So too, failure to make a meritless objection is not ineffective assistance of counsel. *Dennis v. State*, 2020 Ark. 28, 592 S.W.3d 646. To demonstrate error in the preservation of issues on appeal, a petitioner must demonstrate that the issue would have merited appellate relief and resulted in a finding of reversible error. *Thompson v. State*, 2019 Ark. 312, 586 S.W.3d 615. Finally, the fact that there was a witness that could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness. *Hinton v. State*, 2019 Ark. 136, 572 S.W.3d 381.

### A. Failure to Challenge Sufficiency of Evidence Supporting Purposeful Intent

In his first claim for relief, Reynolds contended that counsel failed to preserve a sufficiency argument with respect to the evidence supporting his intent. Specifically, Reynolds argued that because he was under the influence of drugs at the time of the assault, the evidence was insufficient to support a finding that he acted with purposeful intent.

It is well established that voluntary intoxication does not negate criminal intent. Ark. Code Ann. § 5-2-207 (Repl. 2013); *see also True v. State*, 2017 Ark. 323, 532 S.W.3d 70. Moreover, intent can be inferred from the nature and extent of the victim's injuries. *Id*. Here, the evidence demonstrated that Wake suffered severe injuries to her head, neck, chest, ankles, and wrists as a result of Reynolds's assault. A challenge to the evidence supporting Reynolds's intent on the basis that he was under the influence of drugs would have been futile, and counsel was not ineffective for failing to make a directed-verdict motion on this point.

## B. Failure to Suppress Photographs

In his second claim for relief, Reynolds argued that counsel was ineffective for failing to file a motion to suppress photographs depicting the victim's injuries. This court has stated that the mere fact that photos are inflammatory will not render them inadmissible. *Booker v. State*, 335 Ark. 316, 984 S.W.2d 16 (1998). Even the most gruesome photos may be relevant if they tend to shed some light on a material issue, corroborate testimony, are useful to enable a witness to testify more effectively, or enable the jury to better understand testimony. *Id.* Photos may also be admitted to show the nature, extent, and location of the trauma suffered by the victim. *Id.*

Trial counsel testified at the Rule 37.1 hearing that there was no legal basis for an objection to the introduction of the photographs. Here, an objection to the photographs' introduction would have been without merit. The photographs of Wake depicting bruising injuries to her face, neck, wrists, and ankles were not particularly gruesome or overtly inflammatory. Moreover, the photographs were clearly relevant to corroborate her testimony and Watters's testimony with respect to the extent of Wake's injuries. The photographs were also relevant to the charge of aggravated assault because they demonstrated that Reynolds had engaged in conduct that posed a serious risk of injury to Wake. Finally, the photographs were relevant to establish Reynolds's purposeful intent. *Halford v. State*, 342 Ark. 80, 27 S.W.3d 346 (2000) (photographs relevant to demonstrate intent). The relevancy of the photographs outweighed any prejudicial effect; thus, counsel's failure to move for their suppression was not ineffective. *See Williams v. State*, 2017 Ark.

287, 528 S.W.3d 839 (relevance of gruesome photographs of victim's body outweighed prejudice).

C. Failure to Preserve Objection to Wake's Testimony

In his third claim for relief, Reynolds asserted that counsel was ineffective for failing to make a contemporaneous objection to Wake's testimony wherein she described her injuries without corroborating medical evidence. Specifically, Wake testified that as a result of the assault, she sustained a concussion; two minor fractures; and contusions to her neck, throat, back, and chest. Trial counsel did not object when Wake's testimony concerning her injuries was first presented but did object when Wake was again asked to describe her injuries. The trial court overruled the objection and concluded that Wake would be allowed to testify about her injuries. Because trial counsel did not object when Wake's testimony concerning her injuries was first presented, this court found on direct appeal that the issue was not preserved for review. *Reynolds*, 2016 Ark. 214, 492 S.W.3d 491. Counsel's failure to object at the first opportunity was trial error, resulting in this court holding that the objection had not been preserved for appeal. Even so, this court noted that the admission of Wake's testimony was not prejudicial because the jury had already heard Wake's testimony and seen photographic evidence of Wake's injuries, and her testimony was therefore merely cumulative of her prior testimony regarding the injuries she suffered. *Id.*

To the extent Reynolds's trial counsel's failure to object at the first opportunity arguably satisfies the first prong of *Strickland*, this failure does not satisfy the second prong— that his counsel's error was sufficiently prejudicial as to show a reasonable probability of a different outcome. We note from the trial record that Wake described in detail how her

7

injuries were incurred, that the locks and cables from Reynolds's BowFlex machine resembled those used to tie Wake up, and that photographs of Wake's injuries taken during her ride in the ambulance were introduced into evidence. Any deficiency for failing to object to Wake's initial testimony about her medical diagnoses was not so prejudicial as to change the outcome of the trial.

### D. Failure to Call a Witness

In his fourth claim for relief, Reynolds alleged that counsel failed to call Reynolds's cousin as a witness who, according to Reynolds, would have provided favorable testimony. When a petitioner alleges ineffective assistance of counsel for failure to call a witness, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible evidence. *Reams v. State*, 2018 Ark. 324, 560 S.W.3d 441. To demonstrate prejudice, the petitioner is required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. *Id*. Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. *Id*. Such strategic decisions must be supported by reasonable professional judgment. *Id*. Finally, the fact that a witness could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness. *Id*. Rather, the failure to call a witness must be reviewed within the context of all the evidence presented at the trial and at the Rule 37.1 hearing. *Id*.

In the petition filed below, Reynolds did not provide a summary of his cousin's testimony but made conclusory allegations that her testimony would have been favorable

and would have supported the proposition that Wake had "conspired to retaliate false charges against petitioner in order to arrest and convict him." Trial counsel testified that he did not call Reynolds's cousin as a witness because the cousin had not been present during the assault and had seen Wake only on the morning before the events surrounding the crimes unfolded. Thus, Reynolds's trial counsel concluded that her testimony would not have been relevant. On appeal, Reynolds insists that trial counsel's failure to call his cousin as a witness was an unreasonable decision but offers no basis for his argument. Reynolds simply fails to establish that the decision not to call his cousin was unreasonable or that his cousin's testimony would have changed the outcome of the trial when viewed within the context of all the evidence presented.

## E. Prosecutorial Misconduct

Reynolds's fifth claim was that the prosecutor wrongfully vouched for Wake's credibility during closing argument. This argument fails because the issue was, in fact, raised at trial and reviewed on appeal. This court found that the remarks made during closing argument by the prosecutor were not inflammatory, and Reynolds was not prejudiced by the remarks because the trial court provided a curative instruction. *Reynolds*, 2016 Ark. 214, 492 S.W.3d 491.

## F. Failure to Object to Testimony of Accomplice

For his sixth claim, Reynolds contended that counsel should have objected to Watters's testimony because his accomplice testimony was uncorroborated. It is well settled that the corroborating evidence of an accomplice's testimony need not be sufficient in and of itself to sustain a conviction. *Thrower v. State*, 2018 Ark. 256, 554 S.W.3d 825. The test

9

is whether, if the testimony of the accomplice were completely eliminated from the case, the other evidence independently establishes the crime and connects the accused with its commission. *Taylor v. State*, 2010 Ark. 372, 372 S.W.3d 769. Here, Watters's testimony was corroborated by the physical evidence recovered from Reynolds's home, which included the cables and the padlocks described by Watters and Wake as being used to restrain Wake, as well as the DNA evidence, which confirmed the presence of Wake's blood in the room where the assault took place. Without considering Watters's testimony, Wake's testimony and the evidence recovered from Reynolds's home was sufficient to show that Reynolds committed the crimes.

### G. Sufficiency of Evidence Supporting the Conviction for Class Y Felony Kidnapping

In his seventh claim for relief, Reynolds contended that because Wake was released safe and alive, trial counsel should have challenged the sufficiency of the evidence supporting his conviction for Class Y kidnapping. Arkansas Code Annotated section 5-11-102(b)(1) and (2) (Repl. 2013) states in pertinent part that kidnapping is a Class Y felony, but that kidnapping is a Class B felony if a defendant can demonstrate by a preponderance of the evidence that he voluntarily released the person restrained alive and in a safe place prior to trial.

It is a question of fact for the jury to decide which of the kidnapping felonies apply in a particular case. *Clark v. State*, 292 Ark. 69, 727 S.W.2d 853 (1987). The trial record shows that the jury was provided with instructions and verdict forms on both Class B felony and Class Y felony kidnapping. The verdict form shows that the jury found that Reynolds

10

had not proved by a preponderance of the evidence that he released the victim alive and in a safe place prior to trial.

A motion for directed verdict on the Class Y kidnapping charge would have failed. The evidence in this case demonstrated that after Reynolds removed the restraints, Wake remained under his control: she testified that Reynolds did not take her to the hospital; her eyes were swollen shut, which rendered her incapable of escaping; and Reynolds had threatened to kill her if she left him. It was not until she accompanied Reynolds to the house of a third person that she was able to escape from his control. The fact that the victim remained under the control of the assailant is sufficient to support a finding that Reynolds was guilty of Class Y felony kidnapping. *Morgan v. State*, 359 Ark. 168, 195 S.W.3d 889 (2004).

### H. Cumulative Errors

Finally, Reynolds contended that counsel's cumulative errors warrant a determination that his representation was ineffective. None of the errors presented in this appeal create a reasonable probability of a different outcome had they not occurred. Furthermore, this court has not recognized cumulative error in allegations of ineffective assistance of counsel, and we decline to do so in this instance. *Lacy v. State*, 2018 Ark. 174, 545 S.W.3d 746.

Affirmed.

*Edward Joseph Reynolds*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Ass't Att'y Gen., for appellee.

11